at all, number 21-14468. Ms. Gorodetsky, you have reserved two minutes for rebuttal. You may proceed. Good morning and please the Court. Lauren Gorodetsky on behalf of the Consumer Financial Protection Bureau. The Bureau brought this action against 18 defendants for engaging in a fraudulent debt collection scheme. This case proceeded for years and even ended in a final judgment against many of the defendants. For the Bureau's action against five defendants, the appellees here came to an abrupt halt at the close of discovery when the District Court sanctioned the Bureau and opted for the most drastic sanction available, striking the Bureau's claims against these defendants and dismissing them from this case. This sanctions order should be reversed on two grounds. First, sanctions were not warranted below, and second, the drastic sanction of dismissal was an abuse of discretion. Strategic sanctions. The District Court bases its sanctions order on two rules, 37B, which authorizes sanctions for the failure to obey a court order, and 37D, which authorizes sanctions for the failure to appear for a deposition. But neither of those rules warrant the sanctions here. Let me ask you, you, so I've reviewed the deposition transcripts and quite frankly, having taken and defended a lot of depositions, I've not seen anything like this, especially with the memory aid and the objections. How was, in looking at this, how are these depositions, the 30B6 depositions, anything more than a document production? How were these depositions actually fulfilling what a deposition is supposed to do, which is an opportunity for the parties to explore the facts underlying the claims at issue? Your Honor, the witness was there to walk the defendants through the memory aids and provide the most responsive testimony. And what's difficult about this case is that it was a deposition of a law enforcement agency about the facts that its attorneys had gathered in the course of an investigation to prepare for trial. That's what made it quite difficult for the Bureau to respond to the objections and to provide the most responsive testimony. But it's not clear that the Bureau didn't agree with the judge's determination that it even had to do this deposition. But does that mean that the Bureau can do a document production instead? Does the Bureau get to decide or does the District Court? No, Your Honor. The District Court decided that the Bureau had an obligation to sit for the depositions, and the Bureau complied with that order. So do you still think that the Bureau behaved properly? Yes, Your Honor. The Bureau did what the Court asked it to do, which was designate a witness to testify for five depositions. And the Bureau also had its witness testify on facts and objected to questions that intruded on attorney work. But wasn't the whole purpose of taking a deposition to find out the knowledge that the witness had? And if the witness had no personal knowledge but was using scripts that the people that had the knowledge, didn't they designate the wrong person to take the deposition? Well, I'll tell you what your question asks, Your Honor, is who had personal knowledge of the facts in this case? And that's the issue, is that the people with the personal knowledge that was gained was facts that the Bureau had gathered from outside sources. These were not questions about the Bureau's knowledge of facts within the Bureau itself, about the Bureau's policies. It was facts that the Bureau gathered from other sources in pursuit of litigation. Right. So you disagreed with what the District Court wanted the Bureau to answer? I think that's the fundamental problem here, is that the District Court said that these depositions had to take place on certain matters, and CFPB thought that those matters weren't appropriate for depositions, and so you gave a witness some sheets to read. No, Your Honor. The witness was testifying. The fact that there were difficult issues of personal knowledge, the Bureau was entitled to make those objections, and the Court could have resolved those by ruling on any number of the Bureau's objections, but the Court didn't do that. Well, the Court, these issues were repeatedly brought before the Court, and the Court repeatedly told CFPB to submit to these depositions. So the Court was ruling on these issues. In fact, there was an emergency hearing that was held. Well, respectfully, Your Honor, these issues were raised to the Court, but the Court had repeatedly deferred ruling on them, and so when the Court first ruled on the 30B6 depositions, the Court said that the Bureau had to testify, but also said that the witness should testify on facts, and the Bureau should not be expected to divulge attorney work product. Similarly, when the Court ruled on the protective orders, when the Court dropped some of the deposition topics but allowed others to proceed, the Court again emphasized that the right time for objections was within the depositions themselves. So the Court really put off the question of where that line is between fact and work product. But the Court made it clear that CFPB was going to have to follow the mandates of 30B6 and designate a person or persons. And we all know that in the 30B6 context, an entity can designate multiple persons, but CFPB picked one person who was reading from memory aids that were over 100 pages long. I guess there's such an obvious disconnect between what the district court was directing, that what the defendants were, the information the defendants were entitled to learn in this deposition, and what was actually happening in the deposition. How do you address that disconnect? Your Honor, if there was a disconnect, the district court had an opportunity to give a clear guidance of how these depositions could have changed. Now, the only time that the Court really discussed these depositions was during the emergency teleconference, which occurred the day after the first deposition. During that teleconference, the Court said that these memory aids represented a good-faith effort on the part of the Bureau to do what the Court said they had to do. The Court also said that there were many gray areas, not clear-cut areas, between facts and privilege. And the Court said repeatedly that we may have to get the transcript, make a call. And so the Bureau reasonably understood that the Court was just offering general guidance, but would later offer further guidance, clear guidance on what the Court expected the Bureau to do. Was the district court fully aware that the memory aids were taking over an hour and were over 100 pages long? We're not sure, Your Honor. The teleconference occurred before the transcript of the first deposition was available, but I will note that many of the defendants argued during that teleconference that the witness was not offering live testimony, was just using the memory aids as a script. But the Court never said that the Bureau couldn't do that. To the contrary, the Court said that there are some topics that might be necessary to read from a script. And even if the Court wasn't fully apprised of how these depositions were written, the Bureau can't be expected to read underneath the surface of what the Court was thinking because the Court never said anything. The Bureau could only go off of what the district court said during that teleconference. And during that teleconference, the district court approved of the memory aids and repeatedly said that it would later, repeatedly indicated that it would later rule on the objections. But even if this Court disagrees about the scope of the provisions of the Orders, before turning to dismissal, I'd briefly like to discuss Rule 37d, which authorizes sanctions for the failure to appear. And under the clear text of that rule, failure to appear is only when a witness fails to appear for that deposition. Because the Bureau's witness did appear and testify, sanctions were not warranted under that rule. I think that you can certainly argue that the witness appeared. It's a bit of a stretch to say the witness testified. And there is case law from other circuits that have found that a witness who shows up but doesn't in fact offer meaningful testimony, that that is a failure to appear, correct? That is correct, that two circuit court of appeals outside of here have made that decision. I will note that those are not binding and that they did not rely on the clear text of that rule. And a majority of other circuits have said that Rule 37d is limited to the failure to appear. What if a witness shows up and sleeps through the deposition? Can we not say that that's a witness who has failed to appear? Respecting our own law. But there are alternative methods that could be, could remedy that problem. If a court literally fails to appear and complies with the obligations of 37d but offers no testimony, the other side could move to compel and the district court can rule on that. If the court rules on the motion to compel, that other side may be awarded fees for having to bring that motion. And then the failure to comply with that motion to compel could result in sanctions, further sanctions, including dismissal. So if we vacated the sanctions but still determined that some sanctions were proper and the district court reopens discovery, what would the Bureau's conduct look like once discovery was reopened? A few things would be good, Your Honor. We would urge this court or the district court to clearly rule on the Bureau's objections. The Bureau meticulously submitted privilege and objection logs to the district court about each objection and a clear ruling would help the Bureau guide its conduct going forward for objections. Additionally, since these depositions occurred, the Bureau has changed its policy of the type of witness that it designates and so now there is an assistant litigation deputy who testifies instead of an investigator and we think having that type of person who is familiar, who is more regularly digests many facts and is a lawyer and can perhaps easily figure out which facts apply to which claims, that would be another difference as well. So would it be a person with firsthand knowledge of the claims at issue? I can't say exactly, Your Honor, especially because this case was brought some time ago and so there's been a lot of people who have left, but I do believe it would be someone who did not directly work on the investigation, but it would be someone who would learn all the information and testify on the Bureau's behalf. With something other than memory aids, do you think? The witness would still need to use the memory aids given the breadth of the evidence here, but if I think something that could also help would be the district court suggested in the teleconference that the Bureau could submit the aids into evidence, which would prevent the risk of preclusion, which was repeatedly threatened by the other side. If that were to happen and this evidence could be in the record and the Bureau would not have to worry that failing to give every single fact that would support a claim would result in preclusion, could allow the witness to have a little bit of a more interactive discussion with the other side and pick out the most responsive pieces of evidence. So is CFPB arguing that we should allow it to have another opportunity to conduct discovery because it's finally figured out how to comply with the district court's order? Your Honor, the Bureau should have another opportunity here because the court had never indicated that anything was wrong prior to the sanctions order. And that makes this case far distinguishable from all the other cases that defendants rely on where the district court issued some sort of warning, some sort of reprimand or a lesser sanction to help guide the behavior. Here, at no point prior to the sanctions order was the Bureau under any impression that the court considered the Bureau's conduct anything but proper. Again, we can say that the court perhaps held the teleconference before it had the opportunity to review the record, but that was the only thing that the Bureau was able to go off of. Well, the Bureau, before the district court, repeatedly had resisted these depositions at every turn and then was finally submitting because the district court had been ruling against CFPB every single time in trying to avoid the depositions and trying to get the protective orders. And the district court ordered CFPB, said that the defendants were entitled to understand the claims that were being, the facts underlying the claims against them. And I guess I just failed to see that any of that was gleaned in these multiple deposition transcripts. Your Honor, I would just like to disagree with the contention that the court repeatedly rejected the Bureau's claims or ruled against it or that the Bureau was trying to avoid these depositions. When the Bureau reviewed the depositions, it cited on extensive case law of district courts who have not allowed these types of depositions to proceed. There's plenty of cases where the courts say that these types of depositions, asking a witness to tie the facts to the claims, is necessarily intruding on attorney work products. Now, the district court nonetheless ordered the depositions to proceed, but didn't reject the Bureau's claims. Just said the proper time for these arguments, for these objections is within the depositions themselves. And . . . I have a different question. Do you know why only three of the five defendants are here? I don't know exactly why, Your Honor, but I can just give a broad overview that there were five defendants, three filed briefs in response to the Bureau's brief, one of whom I do not believe is here today. I'm not sure why. One filed a joinder last week in those briefs and noticed their appearance to appear. And the fifth one, Pathfinder, to the Bureau's knowledge is not represented by counsel and has done nothing in this appeal, despite the Bureau's best efforts to contact them and send papers to their last registered address. Thank you. Thank you. Mr. Baldrige, you have ten minutes. Good morning. May it please the Court. Doug Baldrige on behalf of Global Payments Appellee. The answer to this question actually comes from telling you the actual story of what happened. I was there. And the actual story does not start with the telephone conference on April 12th, despite the fact that any reference to the actual story is missing from the CFPB's briefs. What actually happened was we start with an order marked at docket 316, which was all the way back in September of 2016. And in that order and in that hearing, objecting to those initial 30B6 notices served by the defendants, the CFPB argued that they weren't subject to the same discovery obligations as other parties. They said that all they wanted to provide was written interrogatory answers, which I consider to be consistent with your questions about documents at the time of this hearing. And the Court said, no, you've got to provide factual matters of subject to inquiry, even if those matters have been disclosed in interrogatory answers. They said the government is like any other party. They have to prepare a knowledgeable witness ready to testify consistent with 30B6, and you've got to sit for a deposition. That was seven months, seven months before this April 12th oral telephone conference that the CFPB relies on. Now, what did the CFPB do next? They didn't listen to what was said in the ruling in docket 316, and they doubled down on it. They doubled down on it, and they filed five motions for protective order. They were entitled to file a motion for protective order, no doubt. But what they weren't entitled to do, according to Judge Story in his ruling, was rehash the identical arguments they had already raised in September 2016 about we only want to provide interrogatory answers, we only want to provide facts that help our case as opposed to hurt it, and we want to be treated differently than other litigants. And Judge Story said again, no. At docket 371, page 2, he said you have to give the complete factual basis for your claims to support the essential elements, even if it hurts your case, you've got to do that. And that includes what Judge Story called exculpatory, which means the good and the bad. The good and the bad. You've got to tell what you're going to put before the jury. So then, with those rulings, written orders, what did the CFPB do? They show up on the April 11 deposition, and they read filibuster scripts of non-responsive information, answers exceeding an hour. Answers that we sat there and watched them read for an hour, take a break, and come back for 15 minutes. Non-responsive. Filibuster. And then, any follow-up question we ask, Mr. Gordon and I ask, about what did you mean by this term in your answer, or what did you look at this document, objection, work product, instruct the witness not to answer. They refused to be interrupted. We tried to say, hey, just wait, quit reading, okay, are you going to read this again? No, we're going to just sit here and read it. And they read it again. They refused to answer any questions about what a witness meant about the testimony. And as you've read the filibuster script, there's literally no substitute for that. In fact, in 35 years, I have never seen anything like this. It was so beyond the pale. Okay, so we have this deposition, then we go back to the April 12 oral conference, already violating two orders. And what does Judge Story do? So Judge Story shows enormous restraint, enormous restraint, and he not only reiterates that you can't just sit there and read, you've got to be able to answer follow-up questions, you can't bury them in information, them being the defendants at the time, and then not allowed any follow-up. You have to reveal the good and the bad of the facts, just like any other litigant, so these folks aren't ambushed at trial. But what did they do again? Three more depositions with the same stuff. They refused to do anything but read. It did change a little bit. They allowed us to say, this page is the answer, as opposed to just sitting there and reading it. Let me ask you one question about the failure to appear issue. How does your argument on the failure to appear align with a text-based reading of the rule? Isn't Rule 37D really just about a failure to physically appear at a deposition? If you look at a single line in 37 and don't look at 30b6 and don't look at the federal rules as a whole, you might get a rigid and absolutely unworkable conclusion, different from the Black Horse decision from the Third Circuit, or different from the RTC decision at the Fifth Circuit, that you can just stick somebody in a room and have them utter gibberish and they've appeared. Do you think Rule 37 maybe operates differently for a 30b6 witness? Well, it operates differently in the sense that it imposes additional obligations on a 30b6 witness. A 30b6 witness can't show up and say, I don't know anything. They have to be educated. They have to review. They have to present, as Your Honor said, witness or witnesses that are prepared to respond to the questions, and they didn't do that. You could see very clearly what happened here. It was ridiculous, quite frankly. Do you think that the judge had to give them a warning before the dismissal, telling them, if you don't correct these problems, I'm going to dismiss the case, and the follow-up question would be, did he have to, in the dismissal order, indicate that he had considered lesser sanctions but found that they wouldn't help? Well, it's interesting. Is it an absolute requirement of law that he said, I will dismiss your case if you don't comply? The answer to that is no. If you look at the Malatoa decision, which he cited out of the Eleventh Circuit, it doesn't directly address it. But what Malatoa says is, I don't have to state in my order, just like Phipps says, that I considered lesser sanctions. But in this case, with lesser sanctions and the threaten of a dismissal, it was raised in the April 12 hearing by Mr. Gleeson, speaking on behalf of his client, that we're going to seek dismissal. We're going to seek terminating instructions, was what one of the defendants said. Now, Your Honor, did the judge say, I will dismiss if you violate my order a third time? No. The judge did not do that. But what I would say is this. Rule 37 put him on notice. Being a licensed lawyer should have put him on notice that the conduct shown in that 1,100 pages was just beyond the pale, regardless of any order and regardless of any warning. And the third point I'd make is, this is precisely why there's an abuse of discretion standard. As the Eleventh Circuit says, when you have a judge like Judge Story, who's done this for a long time, and he's witnessed 400 docket entries, read 1,100 pages, considered his orders, heard daily what the CFPB is doing, he has a right to determine right then that terminating sanctions are appropriate. So I read our cases, specifically Betty Kaye agencies and other similar ones, to say that unless the court explicitly, I would think, says that lesser sanctions would not be sufficient. Here, the court said, in light of the CFPB's pattern of conduct in this case, the court is not optimistic that reopening the depositions would be fruitful, especially given the CFPB's continued use of privilege objections in response to questions that the court expressly identified as permissible. Do you think not optimistic that future depositions would be helpful is enough to count as a finding that lesser sanctions would not be effective? We have to start with the answer of yes, I think that's enough. Because I think a lawyer has to come to this knowing how outrageous the conduct was. But let me respond on the law. If you look at FIPS, FIPS in the 11th Circuit says you don't even have to state that you considered lesser sanctions. You don't even have to state it in the order for the order to be valid. Although as bad as the conduct was here, it was certainly, I would say, even worse in FIPS. Wouldn't you agree? Yeah, it was. I mean, you don't even have to state that you considered lesser sanctions. The second point is the judge did consider lesser sanctions, both in the sentence you did move to reopen the deposition, and he clearly considered that and denied that as one of the appropriate sanctions. So it was before them. But I want to answer this question with a case that also answers your question about granting a different sanction, perhaps going back with a different sanction. You have to go to the United States Supreme Court in the National Hockey League case, and you have to look at what it says. It says, if I may read to the Court, that with the bend of the timesite, appellate courts are heavily influenced by the severity of the outright dismissal as a sanction. But the point of, the Supreme Court says, the point is not just that they're going to straighten up and fly right going forward. Most parties will, even though they didn't. The point is deterrence. Well, Counsel, you've exceeded your time, and we've got five minutes reserved for Mr. Gungor. Good morning, Your Honors. May it please the Court, Mike Gungor. I represent the Appellate Electronic Merchant Services, or EMS, just to piggyback on what Mr. Baldrige was about to say, I think. Going further, in the National Hockey League case, the Court said, here as in other areas of the law, the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent. And I think that that's exactly what the Court was getting at when it was inquiring of the FPB's counsel, asking what might a future deposition look like. I was listening pretty carefully. Nothing that was said would assuage my concern on behalf of my client that anything is going to look any different. And just for kicks and giggles, as they say, you know, last night I asked one of my associates back at the ranch, better late than never, a late-occurring thought, to check to see if there's any report of similar conduct happening anyway, and it's only as good as Lexis or there's no report that they're doing this. I mean, they indicate, you know, here and now that they've reformed and they perhaps have had an epiphany in light of what happened here, but there was nothing that was just suggested that would give me any comfort in terms of what going forward might look like. As Mr. Baldrige noted, and despite what my colleague on the other side just argued, Judge Storey's orders and guidance in this case, I think he went above and beyond. To your question, Judge Schlesinger, as a trial court judge, I think he went above and beyond what was required here. He was clear to the CFPB that it was bound to follow the same civil rules and civil litigation as any other civil litigant. He squarely rejected, he dealt with it, he squarely rejected the argument that it could somehow substitute lawyer-drafted interrogatory responses and production of investigative files in lieu of a real 30B6 witness, and we all know, I've been practicing 38 years, and we all know what a live, what a real 30B6 witness looked like and none ever appeared here, and that is, in my view, tantamount to not showing up. It may not literally be not showing up. I like the question about what happens if you show up and you're asleep, but it's closer to that than to a real live 30B6 witness. He repeatedly gave guidance and instructions to the other side that questions that inquired simply into the factual basis for any allegation the CFPB made against any of the defendants had to be honored and respected, and then at the depositions, what actually happened, and the record is replete with this, the CFPB deliberately tried to circumvent Judge Story's said isn't permitted by relying almost exclusively on something I've not seen in my 38 years, a pre-written attorney-drafted script rather than provide the right type of witness. The examples, and these are set forth in our brief, the examples of what they did, these verbatim recitations in response to questions about, I mean, this is essentially, against the secondary defendants, this is essentially an aiding and abetting case. It's not complicated. The law isn't complicated. Actual knowledge and substantial assistance. So what were we asking questions about? Actual knowledge, substantial assistance. Judge Story's order at page five, with respect to my client, makes it crystal clear, gives them more guidance, respectfully, than most federal judges would give to any practicing lawyer about how they should go about answering certain types of questions and where the line between factual inquiry and attorney work product and potentially privilege should be drawn. So respectfully, I submit on the record before Judge Story and now the record before you, there really isn't a whole lot of room to argue, gee, we didn't understand, gee, the judge wasn't clear or declarative enough. I think he spoke clearly. I think he spoke declaratively. Do you think it matters whether the sanctions were under 37B or 37D? Say it again. Do you think it matters whether the sanctions were issued under 37B or 37D? No. I don't. I don't. I think that I agree with what Mr. Baldrige said, which is any practicing lawyer who gets involved in a case like this knows that you're playing with fire. I joke. I say, don't try this at home. I can't even imagine giving guidance to a colleague that this would be permissible under any of the rules, least of which 30B and Rule 37. And for all those reasons, we would urge your comments.  Thank you, Your Honor. Ms. Gorodetsky, you have two minutes left. Thank you, Your Honor. In closing, I want to emphasize that dismissal is a sanction of last resort, not first resort. Now, while a court is not required to issue a warning before issuing a dismissal sanction, it is important that nearly every case cited by defendants involves some sort of warning. As Judge Grant pointed out in Phipps, that party did not show up for the first witness, for the first deposition, still the court did not dismiss the case. That party then did not show up for a status conference, and still the court did not dismiss the case. Only after the court ordered that party to sit for a second deposition, and then they still did not attend, did the court find it necessary to resort to the last sanction of dismissal. Doesn't the fact that the CFPB's position apparently is still that the behavior was appropriate, doesn't that suggest that the district court's conclusion that lesser sanctions wouldn't help? Doesn't that support that point? If the agency still thinks that this practice was appropriate, then why would lesser sanctions have made a difference? The Bureau is entitled to make all agreements on appeal. First that no sanctions were warranted in the Bureau's comments prior. If this court disagrees, then the Bureau would change its behavior to comply with what this court or the district court says to do. It was only after the district court actually issued its sanctions order that, again, the If the court gave clear guidance, the Bureau would comply because the Bureau takes seriously its obligation to comply with the discovery orders and has not been in this situation before. I understand that you're urging that the court did not provide clear guidance, that the court should have provided more specific guidance relating to each question. I can see that you could make an argument like that if there was a deposition where 90% of the questions were answered and 10% there were some specific objections. But in looking at these deposition transcripts, I'm not sure that CFPB communicated any meaningful information to the defendants. So how would the district court have provided any greater specificity given that situation? Your Honor, if the court had ruled on the objections, then that would have allowed the Bureau to answer them. I would direct this court to FTC v. Violatech or SCC v. Merkin, which were similar depositions of government agencies. And both of those courts ruled on the, after the depositions occurred, ruled that some of the objections were proper and some were not and ordered the agency to comply. But here we have a situation where every, it looked to me, and I'm exaggerating slightly but not by much, that every question was met with work product, do not answer. The court had already instructed the CFPB that it was to sit for this deposition and it had drawn a line between the times the CFPB could claim work product and the times it could not. And the CFPB walked into these depositions and asserted it at every turn. The Bureau did not object to every question, but the Bureau did object to many questions. There were over 30 hours of testimony. But the Bureau was entitled to lodge objections to questions that intruded on attorney work products. And notably, Your Honor, the district court sanctions order didn't even find that the Bureau's objections were improper. And so that issue is not a question here because we don't know. The district court might have agreed that some of the Bureau's objections were proper and that could have allowed the depositions to go forward had the court ordered the Bureau  And in closing, Your Honor. Actually, I have one more question. As you said, this case proceeded against other defendants. Do you know what happened with 30B6 depositions in those parts of the case? I don't know if there were other 30B6 depositions for the Bureau, for those other defendants. And lastly, Your Honor, I just want to emphasize the case EEOC-Vitroy State is a very comparable case where this court reversed the dismissal sanction against an agency finding that the agency's noncompliance was due to a misunderstanding of a confusing oral guidance and the court reversed the dismissal. Thank you. Thank you. Thank you all. We have the case under advisement.